Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

July 11, 2018
WILLIAM M. McCOOL, Clerk
By _____ Deputy

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

UNITED STATES OF AMERICA,

　　　　Plaintiff,

　　v.

DEXTER JORGENSEN,

　　　　Defendant.

NO. CR18-172 JCC

INDICTMENT

The Grand Jury charges that:

## COUNTS 1-5
### (Wire Fraud)

At all times relevant to this Indictment:

**A.　Introduction**

1.　DEXTER JORGENSEN was a South Dakota resident and the owner of various businesses incorporated or located in South Dakota, including but not limited to: Midwest Processing, LLC.; Blackburn Farms and Recycling; Missouri Valley Farms, Inc.; Jorgensen Farms, Inc.; and DJ Farms, Inc. Each of these entities purported to be in the business of recycling and repurposing food and beverage products into animal feed and for agricultural uses.

UNITED STATES v. DEXTER JORGENSEN/ - 1
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2. Randy Sparks was the owner of Silver Dollar Sales, which was a Mississippi-based wholesaler and reseller of salvage and discount grocery items, among other things.

3. Company A was a Massachusetts-based disposal broker in the food and beverage recycling and destruction industry. Company A contracted with food and beverage manufacturers, and other entities, to arrange to dispose of, destroy, or recycle unsaleable food and beverage products by pairing those manufacturers with processors, such as DEXTER JORGENSEN.

4. Food and Beverage Company 1 was a Washington-headquartered manufacturer of fruit juices (including apple juice) and other fruit products.

**B.     The Scheme and Artifice to Defraud**

5. Beginning no later November 2008, and continuing to in or about November 2017, at Seattle, in the Western District of Washington, and elsewhere, DEXTER JORGENSEN, and others known and unknown to the Grand Jury knowingly devised a scheme and artifice to defraud food and beverage manufactures, including but not limited to Food and Beverage Company 1, food and beverage disposal brokers, including but not limited to Company A, and others, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as further described below.

6. The essence of the scheme and artifice to defraud was to cause food and beverage disposal brokers, food and beverage manufacturers, and other sources of grocery products, to transfer products deemed unsaleable to DEXTER JORGENSEN by representing, and providing false documentation showing, that the products would be transported to South Dakota and would be destroyed, recycled, or repurposed as animal feed or for agricultural uses, when in fact, the products would be resold to Randy Sparks and others for sale on the discount food and beverage marketplace for human consumption.

UNITED STATES v. DEXTER JORGENSEN/ - 2
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### C. Manner and Means of the Scheme and Artifice to Defraud

7. DEXTER JORGENSEN, Randy Sparks, and their co-schemers, through the actions of themselves and others acting under their direction, used the following means and acted in the following manner, among others, to effect the scheme and artifice to defraud:

   a. It was part of the scheme and artifice to defraud that DEXTER JORGENSEN represented to Company A, other food disposal brokers, and food and beverage manufacturers the capacities and purpose of his various South Dakota-based businesses to destroy, recycle, repurpose, and convert food, beverage, and other products to animal feed and agricultural uses.

   b. It was further part of the scheme and artifice to defraud that DEXTER JORGENSEN and Randy Sparks represented to Company A, other disposal brokers, and food and beverage manufacturers that unsaleable product would be shipped to one of DEXTER JORGENSEN's South Dakota-based businesses for destruction, which representations caused Company A and other disposal brokers to enter into agreements for product destruction and repurposing with food and beverage companies.

   c. It was further part of the scheme and artifice to defraud that DEXTER JORGENSEN, Randy Sparks, and others, purported to arrange for transportation of the product from the manufacturer to one of DEXTER JORGENSEN's business locations in South Dakota. In fact, rather than transport the product from the manufacturer to South Dakota, as promised, DEXTER JORGENSEN sold the product to Randy Sparks, or another discount grocery entity, for resale on the secondary grocery market, and the product was transported in interstate commerce to the purchaser.

   d. It was further part of the scheme and artifice to defraud that DEXTER JORGENSEN encouraged Randy Sparks to misrepresent the name of his business as Silver Dollar Logistics to cause Company A to believe he was transporting products to DEXTER JORGENSEN in South Dakota, when Randy Sparks was not.

UNITED STATES v. DEXTER JORGENSEN/ - 3
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.  It was further part of the scheme and artifice to defraud that DEXTER JORGENSEN, Randy Sparks, and others, provided, or caused another person to provide, false and altered Bills of Lading or other transportation documents to Company A, other disposal brokers, and various food and beverage manufacturers, showing the product had been shipped from the manufacturer's warehouse to South Dakota for destruction, when in fact, the product was shipped from the manufacturer's warehouse to another state for resale in the discount grocery market.

f.  It was part of the scheme and artifice to defraud that DEXTER JORGENSEN provided false Certificates of Destruction or Certificates of Disposal to Company A and other disposal brokers showing products had been shipped to South Dakota to be destroyed, when in fact, DEXTER JORGENSEN, Randy Sparks, and others had resold the products to discount groceries and other consumers.

g.  It was further part of the scheme and artifice to defraud that DEXTER JORGENSEN and Randy Sparks photographed or caused others to photograph small amounts of the shipped product, purporting to show that the entire shipment had been destroyed, when, in fact, the majority of the product was resold on the secondary grocery market. DEXTER JORGENSEN and Randy Sparks knew the photographs would be provided to food and beverage manufacturers as evidence of product destruction.

h.  It was further part of the scheme and artifice to defraud that DEXTER JORGENSEN regularly changed the name of his business entity when a food and beverage manufacturer became suspicious that product intended for destruction had been resold, or when civil litigation was initiated against DEXTER JORGENSEN for the same or similar conduct to that alleged in this Indictment. These corporate name changes were communicated by DEXTER JORGENSEN to Randy Sparks and others in order to facilitate the transportation and resale of food and beverage products.

UNITED STATES v. DEXTER JORGENSEN/ - 4
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Food and Beverage Company 1 Transactions**

　　　　i.　　On or about May 18, 2015, Food and Beverage Company 1 arranged with Company A to broker the destruction of approximately 22 truckloads of apple juice. Each truckload contained approximately 756 cases, each containing six, one-gallon bottles of apple juice. Food and Beverage Company 1 and Company A agreed that the apple juice would be transported to DEXTER JORGENSEN in South Dakota for destruction due to the existence of mold in samples. It was further part of the scheme and artifice to defraud that on the same day, DEXTER JORGENSEN agreed with Company A to take possession of the apple juice and destroy it at his facility in South Dakota.

　　　　j.　　It was further part of the scheme and artifice to defraud that between May 18, 2015, and June 2, 2015, unbeknownst to Company A or Food and Beverage Company 1, DEXTER JORGENSEN agreed to sell the truckloads of apple juice to Randy Sparks for $1000 U.S. Dollars per truckload.

　　　　k.　　It was further part of the scheme and artifice to defraud that, at various dates beginning on or about June 10, 2015, and continuing through August 7, 2015, Randy Sparks arranged with PiggyBack Plus, a transportation logistics company, to pick up the loads of apple juice in Selah, Washington, and ship the apple juice to various wholesale and resale discount grocery locations in Mississippi and California.

　　　　l.　　It was further part of the scheme and artifice to defraud that, at various dates between June 10, 2015 and July 24, 2015, DEXTER JORGENSEN, Randy Sparks, and others, caused at least 17 truckloads of apple juice to be shipped from Selah, Washington, to the Union Pacific Railroad (UPRR) terminal in Seattle, Washington. Upon arrival at the UPRR terminal, UPRR employees in Seattle, Washington initiated a wire communication to UPRR servers, located in Omaha, Nebraska, confirming the shipper identity and other required information, prior to accepting the truckloads of apple juice for rail transport. The cargo containers of apple juice were then loaded on Union Pacific railcars to be shipped to Marion, Arkansas, for ultimate delivery to Randy Sparks

UNITED STATES v. DEXTER JORGENSEN/ - 5
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

in Mississippi.

  m. It was further part of the scheme and artifice to defraud that, at various dates, between July 6, 2015 and August 27, 2015, DEXTER JORGENSEN provided false Bills of Lading and Certificates of Disposal to Company A related to approximately 22 loads of apple juice. The Bills of Lading showed the apple juice was transported to South Dakota and the Certificates of Disposal showed it was destroyed.

  n. It was further part of the scheme and artifice to defraud that on or about November 18, 2015, after Food and Beverage Company 1's product had been discovered in a discount grocery store in the State of Maryland, DEXTER JORGENSEN provided a letter to Company A falsely stating that "quite a few" of the loads had been moved to South Dakota and that DEXTER JORGENSEN was "completely under the impression that all of the product was being disposed of properly in the manner that [Company A] requested."

### D.  Execution of the Scheme and Artifice to Defraud

8. As representative examples of the scheme and artifice to defraud, on or about the below-listed dates, at Seattle, within the Western District of Washington, and elsewhere, DEXTER JORGENSEN, having devised the above-described scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud, transmitted and caused to be transmitted by means of wire in interstate commerce, writings, signs, signals, pictures and sounds, with each separate transmission constituting a separate count of this Indictment.

//
//
//

UNITED STATES v. DEXTER JORGENSEN/ - 6
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Date | Wire Transmission |
|---|---|---|
| 1 | June 10, 2015 | In-Gate notification transmission from UPRR terminal in Seattle, Washington to UPRR server in Omaha, Nebraska for one truckload of apple juice. |
| 2 | June 23, 2015 | In-Gate notification transmission from UPRR terminal in Seattle, Washington to UPRR server in Omaha, Nebraska for one truckload of apple juice. |
| 3 | June 26, 2015 | In-Gate notification transmission from UPRR terminal in Seattle, Washington to UPRR server in Omaha, Nebraska for one truckload of apple juice. |
| 4 | July 8, 2015 | In-Gate notification transmission from UPRR terminal in Seattle, Washington to UPRR server in Omaha, Nebraska for one truckload of apple juice. |
| 5 | July 22, 2015 | In-Gate notification transmission from UPRR terminal in Seattle, Washington to UPRR server in Omaha, Nebraska for one truckload of apple juice. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 6
**(Conspiracy to Transport Property Taken by Fraud in Interstate Commerce)**

9.    The United States re-alleges and incorporates paragraphs 1-8 of this Indictment.

10.    Beginning no later than January 2014, and continuing to in or about September 2017, at Seattle, in the Western District of Washington, and elsewhere, DEXTER JORGENSEN, Randy Sparks, and others known and unknown to the Grand Jury unlawfully combined, conspired, confederated, and agreed to commit the following offense: interstate transportation of property stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section 2314.

UNITED STATES v. DEXTER JORGENSEN/ - 7
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11. The object of the conspiracy was to cause Company A, food and beverage manufacturers, and other sources of grocery products, to transfer products deemed unsaleable to DEXTER JORGENSEN by representing and providing documentation showing that the products would be transported to South Dakota and would be destroyed, recycled, or repurposed as animal feed or for agricultural uses, when in fact, the products would be resold to Randy Sparks and others for sale on the discount food and beverage marketplace for human consumption and would be transported in interstate commerce to the state in which they would be sold.

12. The Manner and Means of the Conspiracy are laid out in paragraph 7 above.

13. In furtherance of the conspiracy and in order to achieve the objectives thereof, DEXTER JORGENSEN, Randy Sparks, and their co-conspirators, known and unknown to the Grand Jury, on or about the dates specified below, committed or caused to be committed, the following transactions and associated activities, which are representative examples of overt acts in the Western District of Washington and elsewhere:

    a. On or about May 18, 2015, Food and Beverage Company 1 arranged with Company A to broker the destruction of approximately 22 truckloads of apple juice. Each truckload contained approximately 756 cases, each containing six, one-gallon bottles of apple juice. Food and Beverage Company 1 and Company A agreed that the apple juice would be transported to DEXTER JORGENSEN in South Dakota for destruction. On or about the same day, after a representative from Company A had told DEXTER JORGENSEN that Food and Beverage Company 1 wanted the loads of apple juice destroyed, DEXTER JORGENSEN agreed with Company A to take possession of the apple juice and destroy it at his facility in South Dakota.

    b. Between May 18, 2015, and June 2, 2015, unbeknownst to Company A or Food and Beverage Company 1, DEXTER JORGENSEN agreed to sell the

UNITED STATES v. DEXTER JORGENSEN/ - 8
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

truckloads of apple juice to Randy Sparks for $1000 U.S. Dollars per truckload.

      c.    On or about June 2, 2015, Randy Sparks told a representative from Company A that he would transport the product from Washington to South Dakota.

      d.    At various dates beginning on or about June 10, 2015, and continuing through August 7, 2015, Randy Sparks arranged with PiggyBack Plus, a transportation logistics company, to pick up the loads of apple juice in Selah, Washington, and ship the apple juice to various wholesale and resale discount grocery locations in Mississippi and California.

      e.    At various dates between June 10, 2015 and July 24, 2015, DEXTER JORGENSEN, Randy Sparks, and others, caused at least 17 truckloads of apple juice to be shipped from Selah, Washington, to the Union Pacific Railroad (UPRR) terminal in Seattle, Washington, where they were loaded on Union Pacific railcars. The containers were then shipped to Marion, Arkansas.

      f.    On or about July 6, 2015, with the knowledge that the records would be provided to Food and Beverage Company 1, DEXTER JORGENSEN provided false Bills of Lading and false Certificates of Disposal to Company A related to 6 loads of apple juice. The Bills of Lading showed the apple juice was transported to South Dakota and the Certificates of Disposal showed it was destroyed.

      g.    On or about July 16, 2015, with the knowledge that the records would be provided to Food and Beverage Company 1, DEXTER JORGENSEN provided false Certificates of Disposal and false Bills of Lading to Company A related to 5 loads of apple juice. The Bills of Lading showed the apple juice was transported to South Dakota and the Certificates of Disposal showed it was destroyed.

      h.    On or about August 4, 2015, with the knowledge that the records would be provided to Food and Beverage Company 1, DEXTER JORGENSEN provided false Certificates of Disposal and false Bills of Lading to Company A related to 5 loads

UNITED STATES v. DEXTER JORGENSEN/ - 9
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of apple juice. The Bills of Lading showed the apple juice was transported to South Dakota and the Certificates of Disposal showed it was destroyed.

   i. On or about August 13, 2015, with the knowledge that the records would be provided to Food and Beverage Company 1, DEXTER JORGENSEN provided false Certificates of Disposal and false Bills of Lading to Company A related to 4 loads of apple juice. The Bills of Lading showed the apple juice was transported to South Dakota and the Certificates of Disposal showed it was destroyed.

   j. On or about August 27, 2015, with the knowledge that the records would be provided to Food and Beverage Company 1, DEXTER JORGENSEN provided false Certificates of Disposal and false Bills of Lading to Company A related to 2 loads of apple juice. The Bills of Lading showed the apple juice was transported to South Dakota and the Certificates of Disposal showed it was destroyed.

   k. On or about November 18, 2015, after Food and Beverage Company 1's product had been discovered in a discount grocery store in the State of Maryland, DEXTER JORGENSEN provided a letter to Company A falsely stating that "quite a few" of the loads had been moved to South Dakota and that DEXTER JORGENSEN was "completely under the impression that all of the product was being disposed of properly in the manner that [Company A] requested." DEXTER JORGENSEN and Randy Sparks had discussed and collaborated on the fraudulent letter to Company A before DEXTER JORGENSEN sent it.

  14. At various dates between January 2014 and September 2017, DEXTER JORGENSEN, Randy Sparks, and others engaged in similar conduct involving more than 180 truckloads of food and beverage products obtained from at least twelve different manufacturers.

  15. In each instance, DEXTER JORGENSEN provided false Certificates of Disposal and/or Destruction and false Bills of Lading to Company A for truckloads of product, which were sold by DEXTER JORGENSEN to Randy Sparks, or others, for

UNITED STATES v. DEXTER JORGENSEN/ - 10
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

resale on the discount grocery market and never transported to South Dakota for destruction, as promised.

All in violation of Title 18, United States Code, Section 371.

## COUNT 7
### (Interstate Transportation of Property Taken By Fraud)

16. The Grand Jury realleges and incorporates by reference Paragraphs 1 through 15 of this Indictment.

17. From on or about June 10, 2015, through July 24, 2015, at Seattle, within the Western District of Washington, and elsewhere, DEXTER JORGENSEN did unlawfully transport, transmit, and transfer, and aid and abet the transporting, transmitting, and transferring, in interstate commerce, from Seattle, Washington, to other states, goods, wares, merchandise, securities and money, that is, approximately 17 truckloads of Food and Beverage Company 1-brand apple juice, of the value of $5,000 or more, knowing the same to be stolen, converted, and taken by fraud.

All in violation of Title 18, United States Code, Section 2314 and Section 2.

## ASSET FORFEITURE ALLEGATION

18. The allegations contained in Counts 1-7 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

19. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of any of the offenses alleged in Counts 1–7 of this Indictment, the Defendant, DEXTER JORGENSEN, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, or a conspiracy to commit such offense, including but not limited to a judgment for a sum of money representing any property which constitutes or is derived from proceeds traceable to such offense or a conspiracy to commit such

UNITED STATES v. DEXTER JORGENSEN/ - 11
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  offense.Substitute Assets.  If any of the above-described forfeitable property, as a result
2  of any act or omission of the Defendant:
3      a.    cannot be located upon the exercise of due diligence;
4      b.    has been transferred or sold to, or deposited with, a third party;
5      c.    has been placed beyond the jurisdiction of the Court;
6      d.    has been substantially diminished in value; or
7      e.    has been commingled with other property which cannot be divided without
8  difficulty;
9  \
10 \
11 \

UNITED STATES v. DEXTER JORGENSEN/ - 12
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek the forfeiture of any other property of the Defendant, up to the value of the above-described forfeitable property.

A TRUE BILL:

DATED: 7/11/18

*Signature of the foreperson is redacted pursuant to the policy of the Judicial Conference of the United States*

_____
FOREPERSON

_____
ANNETTE L. HAYES
United States Attorney

_____
ANDREW C. FRIEDMAN
Assistant United States Attorney

_____
MATTHEW D. DIGGS
Assistant United States Attorney

UNITED STATES v. DEXTER JORGENSEN/ - 13
INDICTMENT

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970